# MERCHANT *v.* COOK.

EQUITY; MARRIED WOMEN, EQUITABLE SEPARATE ESTATES OF; STATUTE OF FRAUDS.

1. The intention of the grantor or settlor in a deed of settlement for the benefit of a married woman, must be regarded and conformed to with respect to any restrictions or limitations imposed upon the exercise of a disposing power given to the *cestui que trust.*

2. Where such a deed of settlement, made prior to the Married Woman's act of 1869, conveys to the married woman a life estate in the use of the property described, with power of disposition, to be exercised by a request or direction in writing to the trustee, witnessed by two witnesses, to convey to such person as she might name, that mode of disposition must be pursued; and an oral agreement made by her with attorneys whereby she

attempts to charge her equitable estate with the payment of their fees for services relating to the property, will not give them a lien against the estate which equity will enforce.

3. Such an agreement being a contract "for an interest in or concerning lands," etc., is within the provision of sec. 4 of the Statute Frauds, and so far as it attempts to create a charge against the land is not enforceable.

4. But as a contract, irrespective of the lien or charge upon land, it is valid and enforceable at law, and a judgment thereon can be satisfied out of any statutory separate estate of the married woman.

No. 462.　Submitted October 24, 1895.　Decided January 6, 1896.

HEARING on an appeal by the defendant from a decree in a suit to enforce an agreement to charge the equitable separate estate of a married woman with a lien for professional services. *Reversed.*

The COURT in its opinion stated the case as follows :

The bill in this case was filed by the appellees, William A. Cook and Charles C. Cole, against the appellant, Anna J. Merchant, who was sued in her own right as a married woman owning real property, as her sole and separate estate, and upon an alleged contract made by her with the complainants in relation to such estate; and also against certain other defendants named in the bill. The object of the suit, as set forth in the bill, was to enforce a contract made by the defendant Anna J. Merchant, then and still a married woman, with the plaintiffs for professional services rendered as attorneys at law, in conducting a certain proceeding instituted for her, in respect of her separate property, to final and successful termination ; and for which services, as the plaintiffs claim, they have a lien or charge upon the property, by *an express oral agreement* of the defendant Anna J. Merchant; and for the payment and discharge of which claim and lien the plaintiffs pray that the property be sold under decree of the court.

The bill alleges that in November, 1867, there was made a deed of trust by Alexander R. Shepherd to Thomas M.

Shepherd, trustee, for a certain parcel or sublot of ground, in square No. 342, in the city of Washington, for the sole use and benefit of the defendant, Anna J. Merchant, and which deed was duly recorded, and a copy whereof is made an exhibit with the bill.    It is also alleged that the property conveyed by the deed just mentioned was and is subject to a deed of trust or mortgage, originally to secure the payment of $4,000, of which sum there is still due the sum of $3,500 for which a note is held by one or more of the defendants named in the bill.

The bill also alleges and shows, that, in the year 1875, there were three other pieces or parcels of real estate, situate in the city of Washington, conveyed to the defendant, Anna J. Merchant, by certain persons named; but those deeds are not contained in the record before us, and it does not appear that they were made in trust, as in the case of the deed from Alex. R. Shepherd, first referred to.

It is alleged in the bill, that, in October, 1881, the defendant, Anna J., and her husband, Silas Merchant, were, by the false and fraudulent representations of a certain John F. Cook, and his agents, constrained, under duress of threats of prosecution and imprisonment of Silas Merchant, the husband, to execute and deliver to Cook, deeds in fee-simple for the several parcels of real estate before mentioned, including that conveyed in trust by Alex. R. Shepherd; and that such deeds were placed upon record by Cook.    It is then alleged, that the defendant, Anna J., with the knowledge and consent of her husband, and of the trustee named in the deed from Shepherd, employed the plaintiffs, "who were then lawyers, members of the bar of the District courts and of the Supreme Court of the United States, practicing therein as partners, to institute and prosecute the necessary suit or proceeding to have said deeds made by her and her husband, and her trustee, annulled and set aside, and to secure her in the possession, ownership, and enjoyment of said property; and at the time of such employment said Anna J. Merchant paid complainants a retainer of fifty dol-

lars and no more, but then and there agreed and promised
to pay them enough more in addition thereto to make a rea-
sonable and fair compensation to complainants for their pro-
fessional services in instituting and prosecuting such legal
proceedings, and she then and there agreed that such com-
pensation *should be a charge upon and paid out of her said
separate estate*, as soon as the prosecution of said legal pro-
ceedings resulted in annulling said deeds to Cook, *so that
money could be raised thereon by sale or mortgage of a part
thereof.*" And it is further alleged, that, in pursuance of
the agreement, proceedings were taken, and prosecuted to
final decree, which decree was passed in November, 1892,
declaring the deeds to Cook null and void. It is also alleged,
that a reasonable compensation for the services rendered by
the plaintiffs would be the sum of $2,500, less the $50 paid
as retainer.

It is prayed by the bill, among other things, that the
premises considered, the court will decree a sale of said real
estate, or so much thereof as may be necessary for the pay-
ment of plaintiffs' demand, and the prior liens on said real
estate, and out of the proceeds of sale, after payment of
prior liens, that the plaintiffs' demand may be paid and sat-
isfied ; and for further relief.

The deed of trust from Alex. R. Shepherd, dated in No-
vember, 1867, is a conveyance of the legal estate to Thomas
M. Shepherd, trustee, his heirs and assigns forever, " In trust
nevertheless for the uses and purposes following, *and for no
other use, trust or purpose whatever*, that is to say : In trust
for the sole, separate, and exclusive use of Anna J. Mer-
chant, free from all control and ownership by her present
or any future husband, and free and clear of and from all
liability for his or their debts, contracts, &c., to permit the
said Anna J. Merchant to use and occupy the said parcel of
ground and premises, and the rents, &c., to take, have and
apply to and for her sole use and benefit. And upon this
further trust, the said piece or parcel of ground and prem-
ises, or any part thereof, to sell, dispose of and convey ab-

solutely in fee-simple, or in trust by way of mortgage, to such person or persons, and for such uses and purposes as she, the said Anna J. Merchant, shall and may, at any time hereafter, *request and direct in writing, witnessed by two witnesses*, her present or any future coverture notwithstanding. And upon the further trust, *that upon and after the decease* of the said Anna J. Merchant, without having disposed of the said piece or parcel of ground, the said trustee to hold the same for the benefit of all the children of the said Anna J. Merchant who are now living, or who may be by her present husband upon her begotten, to be disposed of either absolutely, or in trust, as they or their legally appointed guardian may direct, he or they joining with said trustee in such conveyance. And upon this further trust, in the event of the death of the said Anna J. Merchant, and all of her said children, without having *absolutely* disposed of the said piece or parcel of ground, the said trustee shall convey the said piece or parcel of ground and premises, or so much thereof, and such interest therein, as may then remain undisposed of, unto Silas Merchant, his heirs or assigns, at his or their cost and expense."

The bill does not, nor does the proof, disclose the fact, whether there be children of Mrs. Merchant living or not, nor has the husband been made a party to the bill.

The defendant, now appellant, Anna J. Merchant, demurred to the bill in its entirety, but the court overruled the demurrer, and required the defendant " to answer said bill, or answer and demur specially to such parts of said bill as she might be advised."

The defendant, Anna J., then demurred to so much of the bill as sought to charge and make liable to the claim of the plaintiffs the pieces of property that were conveyed to the defendant by deeds in 1875 ; and answered the bill so far as it sought to charge the property conveyed in trust for Mrs. Merchant, by the deed from Alex. R. Shepherd, of November, 1867. This demurrer to part of the bill was sustained by the court ; and the order sustaining the de-

murrer and dismissing that part of the bill that related to
the property that was conveyed to the defendant in 1875,
had the effect of relegating or striking from the case all the
property sought to be charged, except that which was con-
veyed in trust by the deed from Alex. R. Shepherd in 1867.
This order, sustaining the demurrer and dismissing the bill
in part, is not presented for review on this appeal; and it
left remaining the question whether the property conveyed
in trust by Shepherd, for the use and benefit of Mrs. Mer-
chant, could, under the allegations and facts of the case, be
made liable for the claim of the plaintiffs ?

In the answer of the defendant, Mrs. Merchant, she
utterly denies the making of the agreement or contract set
forth in the bill; and she also denies that the property con-
veyed in trust for her sole and separate use is liable·for the
claim set up by the plaintiffs.    She also denies that, for the
services rendered, the plaintiffs are entitled to claim the sum
of $2,500.    And, by an amendment of her answer, she
pleads and relies specially upon the Statute of Frauds, 29
Charles 2, ch. 3, in force in this District.

Testimony was taken, and it is very conflicting, upon the
issue whether the contract was made as alleged in the bill.
The plaintiffs swear positively to the terms of the contract
as alleged; but, on the other hand, that testimony is expli-
citly denied by the defendant, and witnesses examined on her
behalf.    There can be no doubt, however, that valuable
professional services were rendered the defendant by the
plaintiffs, in rescuing her property from the operation of the
fraudulent deeds to Cook.    But, under the law, if the
requisite formalities and ceremonies to make the contract
binding as against the property of the defendant, were omit-
ted or not conformed to, the court is powerless to furnish
redress.

To prove the contract as alleged, both the plaintiffs, C.
C. Cole and Colonel Cook, were examined as witnesses.
In the testimony of the former, he says :   " Mrs. Merchant
always assured me that if we would press the case along

and succeed in setting the deeds aside, and she felt we would, there would be no difficulty in our having a reasonable fee promptly on the favorable termination of the suit. I remember particularly on one occasion in her parlor on R street, in this city, I have forgotten the number of the house, having such a conversation with her, and that she said to me that she had some interests with her brother, Governor Shepherd, upon which she hoped to realize money before a great while, and if, and when she did, she would pay us something on account of the fee out of that, but that, if she did not get that, our fee was safe out of the property when the suit ended. I remember that particular conversation more distinctly than any other. I mean that she said we should be paid out of the property involved in the suit, if she was unable to pay us before the suit terminated. I remember also very distinctly a conversation with Mrs. Merchant at which Colonel Cook was present, in the office he and I then occupied in common at the corner of Sixth and D streets, in which she said substantially the same thing, only I don't remember she referred to any interest she had with her brother at that time. In pursuance of that understanding, and on the faith of it, we prosecuted the suit to a successful termination."

The remainder of the testimony of this witness relates to the nature and value of the services rendered.

The testimony of Colonel Cook, the other plaintiff, is of substantially the some import of that of Mr. Cole, though, perhaps, not so explicit or direct to the fact of an agreement to charge the separate estate of Mrs. Merchant. There is no claim or pretence that any contract that was ever made upon the subject was ever reduced to writing and signed by the party to be charged therewith. The entire understanding rested in mere oral conversations. And all the evidence offered on the part of the plaintiffs to establish the contract as alleged in the bill, has been, in emphatic terms, denied by the defendant and her husband in their testimony.

*Messrs. Padgett & Forrest* for the appellants :

1. The alleged agreement making the compensation of complainants a lien on the property, not being in writing but merely verbal, was contrary to the Statute of Frauds and cannot be enforced.   8 Am. and Eng. Ency. Law, 695; *Townsend* v. *Vanderwerker*, 9 Mack. 197.   Land cannot be subject to a mortgage, lien or trust, by a mere oral agreement.   *Williams* v. *Hill*, 19 How. 246 ; *Randall* v. *Howard*, 2 Black, 585.

2. Under the terms of the deed creating the estate in question in the appellant, she was vested with a life estate with a general power of appointment during her life ; and on failure to make such appointment her children became vested with a life estate in possession with general power of appointment during life ; and on their failure to make such appointment her husband, Silas Merchant, took the estate in fee. *Brown* v. *Chase*, 94 U. S. 812.   The estates limited to the children and husband became vested at the same time that the life estate of appellant became vested, subject to be divested upon the exercise of the power of appointment by the appellant.   Elphinstone, Interpretation of Deeds, 361.

The exercise of this power was discretionary with the donee, and as she had not attempted to exercise the power in this case, equity will not compel her to do so.   Neither in such a case will equity interpose in favor of creditors.   18 Amer. & Eng. Ency. Law, page 986 and very full note. *Holmes* v. *Coghill*, 12 Ves. 206 ; 1 Story's Eq. Juris., sec. 176, note 4.   It is only in case where a donee exercises her power, either by deed or will, in favor of volunteers, that equity will interfere in favor of creditors.

*Mr. W. L. Cole* and *Mr. Edwin Sutherland* for the appellees :

1. When not restricted in her power of disposition by the instrument creating her separate estate, a married woman has the right to dispose of it in any manner that she pleases,

this right being regarded as an incident to her ownership of the property, and her separate estate is for a like reason liable in equity to the payment of all her debts. *Grigby* v. *Cox*, 1 Ves. 517 ; *Hulme* v. *Tenant*, 1 Bro. C. C. 16 ; see also *Ankeney* v. *Hannon*, 147 U. S. 118 ; *Willard* v. *Estham*, 15 Gray, 326 ; *Yale* v. *Dederer*, 22 N. Y. 450.

2. Nor does it make any difference that the instrument creating the separate estate prescribes a particular mode of enjoyment or disposition ; any other mode of enjoyment or disposition not expressly or by necessary implication forbidden may be pursued. The maxim *expressio unius exclusio alterius* must yield to the natural inference that the gift of an unqualified right of ownership carries with it an equally unlimited power to dispose. *Parks* v. *White*, 11 Ves. 222 ; *Pybus* v. *Smith*, 1 Ves. Jr. 189 ; *Witts* v. *Dawking*, 12 Ves. 501 ; *Brown* v. *Like*, 14 Ves. 302 ; *Sturgess* v. *Carp*, 13 Ves. 190 ; *Acton* v. *White*, 1 Sim. & St. 429 ; *Vallet* v. *Armstrong*, 4 Beav. 319 ; *Stanford* v. *Marshall*, 2 Atk. 68 ; *Grigby* v. *Cox*, 1 Ves. Sr. 517 ; *Artony* v. *Nieman*, 3 Bro. 346 ; *Ellis* v. *Atkinson*, 3 Bro. C. C. 565 ; *Sparling* v. *Rockford*, 8 Ves. Jr. 164.

3. When property is settled to the separate use of a married woman, she is to be regarded as a *feme sole* as to that property, and she may dispose of it in any manner she pleases, unless specifically restrained by the instrument under which she takes the property ; and although a particular mode of disposition is pointed out in the settlement, it will not preclude her from adopting another mode of disposition, unless there are negative words restricting her power of disposition except in the mode pointed out. *Jaques* v. *M. E. Church*, 17 John. 548 ; *Yale* v. *Dederer*, 22 N. Y. 450 ; *Kunne* v. *Whippart*, 46 Mo. 542 ; *Imaly* v. *Huntington*, 20 Conn. 147 ; *Todd* v. *Lee*, 15 Wis. 365 ; *Woodson* v. *Perkins*, 5 Gratt. 345 ; *Harris* v. *Harris*, Iredell's Equity, 311 ; *Smith* v. *Thompson*, 2 MacArthur, 291 ; *Radford* v. *Carwile*, 13 W. Va. 589 ; *Price* v. *Bingham*, 7 H. & J. 296 ; Gray, Restraint of Alienation, sec. 4.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

On the whole case, as shown by bill and proof, there are three questions presented:

1st. Whether the claim of the plaintiffs, and the extent thereof, be established by proof;

2d. Whether, if the claim be established, it constitutes a charge or lien upon the trust property of the defendant, Mrs. Merchant, such as to entitle the plaintiffs to a sale of the property to satisfy their claim; and,

3d. Whether the claim of the plaintiffs, resting in mere oral argreement or promise, is not within the Statute of Frauds, and therefore barred of the right of recovery thereon, as against the separate real estate of the defendant?

1. With respect to the first of these questions, in view of the conflict of the evidence in relation thereto, and also of the principles of law to which the case gives rise, we deem it unnecessary to decide as to the fact of the existence of the contract and the extent of the claim thereunder. But, assuming the claim to be established or undisputed, then the second question arises to be considered and determined; and that is—

2. Whether such claim can constitute a lien or charge upon the separate estate of the defendant, within her power of disposal as given and defined in the deed of trust from Shepherd—such as to entitle the plaintiffs to a decree for the enforcement of such lien or charge, by sale of the property? The property sought to be subjected to the payment of the claim is an equitable estate vested in the defendant, a married woman, by deed or settlement, made prior to the Married Woman's act of April 10, 1869, and that act, therefore, has no application to the case. The rights of the parties are governed, and must be decided, according to the general principles of equity jurisprudence applicable to such case, and without any reference to the statute of 1869.

It is a well settled rule of construction of conveyances,

such as the one before us, that the intention of the grantor
or settlor must be regarded and conformed to with respect
to the restrictions or limitations imposed upon the exercise
of the disposing power of the grantee or *cestui que trust*.
Here the deed conveys to the married woman a life estate
in the use of the property, with power of disposition to be
exercised with certain formality and restriction—the legal
estate remaining in a trustee. Such formality and restric-
tion are intended, manifestly, for the protection of the mar-
ried woman, and also for the protection of those entitled in
remainder after the death of the *cestui que trust* for life.
The power of disposal, as expressed in the deed, is " to
sell, dispose of and convey absolutely in fee-simple, or in
trust by way of mortgage, to such person or persons, and
for such uses and purposes, as she, the said Anna J. Mer-
chant, shall and may at any time hereafter, *request and di-
rect in writing, witnessed by two witnesses*, her present or
future coverture notwithstanding." And in default of such
disposition, the property in trust is limited over to the children
of the equitable life tenant on her death, and in default of
children, then the trustee is required to convey the estate to
the husband of the life tenant. It was clearly the intention
of the grantor in the deed, that the power of disposition
should be exercised in the manner prescribed by him, and
that the limitations over should not be defeated except in
the manner prescribed. It appears that the power of dis-
posal has been exercised in the making of the mortgage
referred to in the bill, but that was *pro tanto* only. What-
ever remains of the estate, remains subject to the power of
disposal as prescribed by the deed.

It clearly cannot be successfully contended that the
property conveyed to the separate use of the defendant, by
the deed before us, is liable to her general engagements.
There has been, no doubt, a great diversity of decision,
both in the English and American courts, as to the condi-
tions and circumstances under which the separate estate of
a married woman may be charged with her debts. But, as

said by the Supreme Court of the United States, in *Ank-
eney* v. *Hannon*, 147 U. S. 118, 128, " as to such property
she is regarded in equity as a *feme sole*, and it was, therefore,
formerly held that her general engagements, though not
personally binding upon her, could be enforced against the
property.    This doctrine, however, has been modified in
modern times.    It is now held that to charge her separate
estate with her engagements, they must have been made with
with an intention on her part to create a charge upon such
estate ; that is, with reference to the property, either for its
improvement or for her benefit upon its credit.    " There has
been much divergency of opinion and some conflict, both
in the courts of England and of this country," says Mr.
Justice FIELD, speaking for the court, " as to what is
necessary to establish such intention on the part of the wife
to charge her separate estate for her contracts.    It is con-
ceded that there must have been an intention on her part to
effect such a charge, otherwise her engagements will not
have that effect."

The Supreme Court then proceeds to say :    " The numer-
ous decisions in the High Court ·of Chancery of England
have shown this divergency and conflict in a marked de-
gree.    Lord THURLOW places the right of the wife to charge
the property upon her right as owner to dispose of it with-
out other authority.    *Hulme* v. *Tenant*, 1 Bro. C. C. 16 ;
*Fettiplace* v. *Gorges*, 3 Bro. C. C. 8.    But this theory was
afterwards rejected by Lord LOUGHBOROUGH, who denied
the liability of a married woman's separate estate for her
general parol engagements, and explained the previous
cases upon the ground that the securities which the wife
had executed operated as appointments of her separate
property.    *Bolton* v. *Williams*, 2 Ves. Jr. 138.    This doc-
trine proceeded upon the assumption that the wife's sepa-
rate estate was not liable for her general engagements, but
only for such as were *specifically charged in writing upon it.*
This theory Lord BROUGHAM rejected, holding that there
was no valid distinction between a written security, which

the married woman was incapable of executing, and a
promise by parol, and that a mere parol engagement of the
wife was equally effective to create a charge as her bond or
note. *Murray* v. *Barlee*, 3 M. & K. 209. The reasoning
of Lord BROUGHAM to establish his views was afterwards
met and rejected by Lord COTTENHAM. *Owens* v. *Dickenson*,
1 Cr. & Ph. 48." And to the effect that a married woman,
having separate estate, does not charge it by her general
engagements, but only by executing written instruments
having special reference to her separate estate, see opinions
of SIR JOHN LEACH, Vice Chan., in cases of *Greatley* v.
*Noble*, 3 Mad. 49, and *Stuart* v. *Kirkwall*, Id. 387.

This subject is very fully considered in the cases of *Yale*
v. *Dederer*, 22 N. Y. 450, and *Willard* v. *Eastham*, 15 Gray,
328, 335, both of which cases are referred to with approval
by the Supreme Court of the United States, in the case of
*Ankeney* v. *Hannon, supra.*

The general result of what appears the best considered
cases, depending upon the terms of the deed or conveyance
creating the separate estate, as to the extent of the dispos-
ing power conferred upon the *cestui que trust*, is this, that
inasmuch as a married woman is treated in equity as a *feme
sole*, in respect to her separate estate, where the instrument
creating the estate contains no restrictions or limitations on
the power of disposition, she may dispose of it, or charge
it, as a *feme sole*, upon the principle that the *jus disponendi*
accompanies the property. But where a mode of aliena-
tion or appointment is provided in the instrument creating
the estate, that mode must, in a substantial way at least, be
pursued, for by plain implication, it operates as a negation
of any other mode, and is a paramount law, governing and
controlling every contract in relation to the property. Such
limitation the grantor or settlor has the right to impose,
and the ceremonials prescribed by him are of the essence
of the power, and therefore cannot be disregarded. *Cook*
v. *Husbands*, 11 Md. 492, 503 ; 2 Sto. Eq. Jur., secs. 1390,
1391, and *note* containing collection of authorities ; *Thack-*

*well* v. *Gardiner*, 5 De G. & Sm. 58.   And for a full col-
lection and review of the American cases upon this sub-
ject, see the note of the American editors to the case of
*Hulme* v. *Tenant*, 1 Eq. Lead. Cas. 679.

Whether, if the contract as set out in the bill had been
reduced to writing, stating on its face the intention to
charge the separate estate with the claim, it could have
been specifically enforced against the property, by a court
of equity, as a disposition by contract in the nature of an
appointment, is a question that might admit of serious dis-
cussion, in view of some of the cases upon the subject.
But that question we are not required to consider in
this case.

3. We come now to the last question presented by the
defendant, raised both by the general demurrer to the bill
(*Randall* v. *Howard*, 2 Black, 585, 589), and the amended
answer ; and that is, as to the applicability of the Statute of
Frauds to the attempted charge of the real estate of the de-
fendant with the plaintiffs' claim, by mere parol.   We have
seen that there is no lien or charge created upon the estate
by mere operation of law by reason of the existence of the
contract simply ; but that, in order to create a charge or
lien upon the property, it must be effected by an express
contract, having reference to the property to be charged.
In this case, as we have seen, it is not claimed or pretended
that the contract set up and attempted to be enforced against
the separate real estate of the defendant, was reduced to
writing and signed by her or by any one for her.   It is alleged,
and also proved by the plaintiffs, that the defendant agreed
that their claim for services should be a charge or lien upon
the land upon the successful termination of the litigation to
avoid the deeds.   This was clearly a contract " for an in-
terest in or concerning lands, tenements, or hereditaments,"
and is therefore within the provision of section 4 of the Stat-
ute of Frauds.   *Alchin* v. *Hopkins*, 1 Bing. N. C. 102 ; *Top-
pen* v. *Lomas*, 16 Com. B. 145 ; *White* v. *Coombs*, 27 Md.
489 ; Brown, St. Frauds, secs. 266, 267 ; 2 Taylor Ev. sec

948, p 913. The Statute of Frauds, however, only applies so far as the contract professes or attempts to create a charge or lien upon the land. As a contract, irrespective of the lien or charge upon land, it is valid and enforceable by action at law, if established by proof ; and the judgment when recovered would be enforceable against both land and personal property, acquired and held by the defendant under the Married Woman's act of April 10, 1869. Here the property sought to be charged is not held under that act, but independently of it.

The conclusion is, from what we have said, that the decree of the court below establishing the claim of the plaintiffs to the extent of $2,000, subject to a credit of $240.75, and decreeing the sum so ascertained to be a lien upon the separate property of the defendant, conveyed in trust to her use by the deed from Alex. R. Shepherd, and that the same should be sold to satisfy such lien, must be reversed ; and as the bill and the proof present no case for relief by a court of equity, the cause will be remanded, with directions that the bill be dismissed.

*Decree reversed, and cause remanded.*